THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEMISILICON TECHNOLOGY CORP. | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 25 C 7388 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| CHANGZHOU JUTAI ELECTRONIC CO., LTD.; LINHAI CAIYUAN TRADING CO., LTD.; MAANSHAN HAOLUO MAOYI YOUXIAN GONGSI; NINGBO YIHAI YANGTIAN LIGHTING CO., LTD.; and TAIZHOU FEIXIN DENGSHI YOUXIAN GONGSI, | ) ) ) ) ) ) ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This is Semisilicon's second swing at suing these five Defendants for allegedly infringing its patents by selling Halloween and Christmas lights on Amazon. (Dkt. 1). Semisilicon, unable to effectuate service in the Northern District of California, dismissed its case against the Defendants there on June 30, 2025, and then refiled the same claims against the same Defendants here the very next day. (*Id.*) Semisilicon filed no summons or waiver of service but instead waited nearly four months and then filed a motion for a preliminary injunction (Dkt. 12) and a motion for electronic service of process against the Defendants. (Dkt. 14). During the pendency of that filing, the Court ordered the parties to provide supplemental briefing over whether the Court possessed jurisdiction over the Defendants. (Dkt. 41). The parties submitted that supplemental briefing. (Dkts. 42-49). The Court, having considered the parties' supplemental submissions, evidence, and briefing, finds that it has no personal jurisdiction over Defendant Changzhou Jutai Electronic Co., Ltd. ("Jutai") but that it does have jurisdiction over the remaining Defendants, Linhai Caiyuan Trading Co., Ltd.

1

("Caiyuan"), Maanshan Haoluo Maoyi Youxian Gongsi ("Haoluo"), Ningbo Yihai Yangtian Lighting Co., Ltd. ("Yihai"), and Taizhou Feixin Dengshi Youxian Gongsi ("Feixin"). The Court dismisses Jutai from this case. As for Semisilicon's motions for preliminary injunction and electronic service of process, the Court denies both for the reasons below. (Dkt. 12, 14).

## BACKGROUND

Semisilicon sued five Defendants for selling three products that allegedly infringe two United States Patents: Nos. 10,187,935 and 9,939,117. Defendants allegedly sell (or manufacture parts incorporated into) Halloween and Christmas lights on Amazon:



(Dkt. 1, ¶ 1); (*see* Dkt. 12-3 *through* 12-5). Semisilicon is a Taiwanese entity, with its principal place of business in Taiwan (*id.*, ¶ 2), whose business model is licensing its patents. (Dkt. 12 at 13-15). All of the Defendants are Chinese entities with their principal places of business in China. (*Id.*, ¶¶ 2-7). None of the Defendants have a physical presence in Illinois. (*Id.*); (Dkts. 42, 44, 45, 48). At most they have run-of-the-mill websites (Jutai) or offer products on Amazon (Caiyuan, Haoluo, Yihai, and Feixin (collectively "the Amazon Defendants")). (*Id.*); (Dkts. 42, 44, 45, 48). Jutai manufactures constant-voltage, constant-current power supply products but does not offer those products for sale directly on Amazon. (Dkt. 45-1, ¶¶ 6, 9). The Amazon Defendants sell Halloween and Christmas lights (allegedly incorporating or using Jutai's power supply products)

2

on Amazon. (Dkts. 1, 12). Semisilicon offered no evidence of actual sales from any Defendants for any allegedly infringing products in Illinois. (*Id.*) It instead relies solely on screenshots of product listings on Amazon—all of which are unavailable. (Dkt. 12 at Exs. B-D). The parties have not requested a hearing or jurisdictional discovery.

## **LEGAL STANDARD**

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "The default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20, 22). "Of all of these factors, the likelihood of success on the merits ordinarily carries the most weight." *Minocqua Brewing Co. LLC v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025) (quoting *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023)).

## **DISCUSSION**

The Court ordered the parties to provide supplemental briefing over whether it possessed personal jurisdiction over the Defendants. (Dkt. 41). Semisilicon asserts that personal jurisdiction is proper based on Defendants' "own waiver and admissions" as well as under Federal Rule of Civil Procedure 4(k)(2). (Dkt. 43 at 1). In Semisilicon's view, its allegations in its Complaint are sufficient to establish jurisdiction, and, even if not, Defendants admitted to jurisdiction in their Answers to its Complaint. (*Id.* at 2). It continues that Rule 4(k)(2) confers jurisdiction because Semisilicon's claim arises under federal law, no Defendant is subject to jurisdiction in any state, and the Court's exercise of jurisdiction comports with Constitutional Due Process. (*Id.* at 3-7). On

3

this last point, Semisilicon specifically points to Defendants' websites and product listings on Amazon. (*Id.*) In response, the Amazon Defendants contend that they "never 'admitted' anything," "expressly denied that personal jurisdiction exists," and merely did "not 'contest' personal jurisdiction 'for purposes of this action only'" which, in their view, "is irrelevant to the Court's independent obligation to inquire into the existence of jurisdiction *sua sponte*." (Dkt. 48 at 1-2) (citing Dkts. 24-27, ¶ 10) (quotes omitted). They also insist Rule 4(k)(2) fails because Semisilicon sued them in the Northern District of California, dismissed that suit after failing to effectuate service, and refiled in this district to forum shop. (*Id.* at 2-4). Jutai responded separately with a declaration bullet-pointing why it has no contacts with Illinois: from no sales, inventory, offices, or employees, to no knowledge where the products it manufactures are later sold, no sales of products relevant to the patented technology, and no Amazon storefront. (Dkts. 45, 45-1).

Turning to the Amazon Defendants' affirmative positions why the Court lacks personal jurisdiction, they point out that they are Chinese entities that merely list goods on websites such as Amazon.com and that Semisilicon failed to show evidence of allegedly infringing sales in Illinois. (Dkt. 44 at 1-5). They emphasize that the products Semisilicon included in its Complaint are not available for purchase. (*Id.* at 4). As for Defendant Jutai's affirmative position, that mirrors its position in response to Semisilicon's affirmative brief. (*Compare* Dkt. 42 *with* Dkt. 45). In response to these positions, Semisilicon contends that the Amazon Defendants "knowingly waived any personal jurisdiction objection." (Dkt. 47 at 1-4). It further asserts that Jutai has sufficient contacts with the forum based on its website because it possesses "U.S.-facing webpages" that identify a "US Power Supply category" and it calls itself "the preferred brand for Amazon ecommerce." (*Id.* at 5). Semisilicon also asserts that Jutai's positions are "contradicted by the well pleaded allegations of the Complaint." (*Id.*) Semisilicon also argues that Jutai failed to present

4

sufficient evidence against personal jurisdiction, because, for example, its declaration is "conclusory," the cases it relies on (holding that operating a website is insufficient for jurisdiction) are distinguishable, and that Jutai is "aware" that its sales of products into the stream of commerce wind up in Illinois because, for example, Jutai is "identified as the 'manufacturer' on many of the Amazon product listings." (*Id.* at 5-6) (*see also id*. at 1-7).

## I.    Personal Jurisdiction

### a.  Waiver

In a world without waiver there is little doubt that the Court would lack personal jurisdiction over the Amazon Defendants. They have no contacts with Illinois and Semisilicon showed no sales in Illinois. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir. 2017); *see also Liu v. Monthly*, 170 F.4th 1090, 1093 (7th Cir. 2026); *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 623-27 (7th Cir. 2022); *Hublot SA v. Partnerships & Unincorporated Associations Identified on Schedule A*, 2026 WL 1383202, at *1-3 (N.D. Ill. May 18, 2026). Yet all waived this defense.

Semisilicon alleges in Paragraph 10 of its Complaint that "[t]his Court has personal jurisdiction over each defendant" because each "has been conducting business and committing acts of infringement within Illinois and in this District" including by "selling one or more of the infringing products, knowing that they will be purchased and used by customers in Illinois and in this District." (Dkt. 1, ¶ 10). The Amazon Defendants did not deny these allegations; they instead did "not contest" that the Court has personal jurisdiction:

> Defendant denies the allegations in Paragraph 10 of the Complaint, except that for purposes of this action only, Defendant does not contest that this Court has personal jurisdiction over it and does not contest venue under 28 U.S.C. § 1391. Defendant does not concede or admit, however, that venue is proper in this District in terms of convenience under 28 U.S.C. § 1404. Defendant denies all remaining allegations in Paragraph 10 of the Complaint.

(Dkts. 24-27, ¶ 10) (all Amazon Defendants gave identical responses). None raised lack of personal jurisdiction in their "affirmative and other defenses." (*Id.* at 6-8) (capitalization removed). They did not contest jurisdiction in their opposition to Semisilicon's motion for preliminary injunction. (Dkt. 22). They have not moved to amend their Answers to the Complaint. *See* Fed. R. Civ. P. 15(a).

Even against that backdrop, they claim they did not waive their defense. They assert that they "never 'admitted' anything and expressly denied that personal jurisdiction exists." (Dkt. 48 at 1). In their view, "that they would not 'contest' personal jurisdiction 'for purposes of this action only' . . . is irrelevant to the Court's independent obligation to inquire into the existence of jurisdiction *sua sponte*" because "parties cannot confer jurisdiction by agreement." (*Id.* at 2) (cleaned up, quotes omitted). No amount of zeal can turn this into a straight-faced statement. By not contesting jurisdiction, the Amazon Defendants admitted it. *Supra* at 5-6. They no doubt knew how to be explicit. They expressly denied every allegation in Paragraph 10 of the Complaint "except" personal jurisdiction. (Dkts. 24-27, ¶ 10) ("Defendant denies the allegations in Paragraph 10 of the Complaint, except that for purposes of this action only, Defendant does not contest that this Court has personal jurisdiction over it"). This is indeed relevant to the Court's independent obligation to ensure personal jurisdiction "[b]ecause the requirement of personal jurisdiction represents . . . an individual right" and so "it can, like other such rights, be waived." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). "Rule 12(h) directly addresses waiver, providing that a party waives a defense, including that based on personal jurisdiction, by omitting it from its first motion or by failing to *either* make it in a motion under Rule 12 *or* include it in the responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016); *In re*

*Kutrubis*, 550 F. App'x 306, 309 (7th Cir. 2013). By failing to raise their defense in their answer or responsive pleading, the Amazon Defendants forfeited the defense and admitted to personal jurisdiction. *Bauxites*, 456 U.S. at 703; *Hedeen*, 811 F.3d at 906; Fed. R. Civ. P. 12(h).

The same cannot be said for Jutai. Jutai unambiguously denied Semisilicon's allegations that the Court possesses personal jurisdiction over it:

> Defendant denies the allegations in Paragraph 10 of the Complaint. In particular, Defendant denies that this Court has personal jurisdiction over it because, inter alia, Defendant (i) has never conducted any business in Illinois, (ii) has never committed any acts of infringement in Illinois, (iii) has never sold any products in Illinois, and (iv) has never sold any products anywhere in the world knowing they would be purchased in Illinois or otherwise encouraging their purchase in Illinois.

(Dkt. 28, ¶ 10). Jutai also raised lack of personal jurisdiction as an affirmative defense. (*Id.* at 7). The Court therefore holds that the Amazon Defendants expressly assented to personal jurisdiction whereas Jutai has not. This ends the jurisdictional inquiry for the former but not the latter.

### b. Federal Rule of Civil Procedure 4(k)(2)

The Court next addresses whether Jutai is subject to specific personal jurisdiction under Rule 4(k)(2). (Dkt. 43). "In patent infringement cases, the issue of whether the district court had personal jurisdiction over a defendant is a question . . . under Federal Circuit law" including "whether Rule 4(k)(2) applies." *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1384 (Fed. Cir. 2023) (cleaned up). "Rule 4(k)(2) was introduced to 'close a loophole that existed prior to the 1993 amendments,' by which 'a non-resident defendant who did not have "minimum contacts" with any individual state sufficient to support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states.'" *Id.* (brackets omitted) (quoting *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009)). "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts

of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

This case falls under federal law. (Dkt. 1); 35 U.S.C. § 271. Semisilicon failed to serve a summons or file a wavier of service. *Compare the Docket with* Fed. R. Civ. P. 4(k)(2). Defendants submitted correspondence showing that they signed and returned to Semisilicon executed waivers of service (Dkt. 19); even giving grace on this requirement, Semisilicon fails to satisfy Rule 4(k)(2). *Infra* at 10-15.

Jutai must identify "a forum where the plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent"—under the "so-called 'negation requirement' of Rule 4(k)(2)(A)." *In re Stingray*, 56 F.4th at 1384-85 (quotes omitted); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) ("we agree with the Seventh Circuit's conclusion that if 'the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)'") (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001), *as amended* (July 2, 2001) ("A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed.")). Jutai named no state. (*See* Dkts. 42, 45).

The Court must address the mandatory fourth element, whether "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(B). "Personal-jurisdiction analysis for patent-infringement claims is governed by Federal Circuit law." *Univ. of Massachusetts v. L'Oreal S.A.*, 36 F.4th 1374, 1384 (Fed. Cir. 2022). "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal

jurisdiction would violate due process." *SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371, 1374 (Fed. Cir. 2024) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). The Illinois long-arm statute is coterminous with federal due process requirements, so the two-step inquiry becomes one: whether the exercise of personal jurisdiction comports with Constitutional due process. 735 ILCS 5/2–209(c); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *SnapPower*, 100 F.4th at 1374.

The "current framework for assessing personal jurisdiction under the Fourteenth Amendment derives from *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025). There are two types of personal jurisdiction: general and specific. *Id.*; *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017). "General jurisdiction lies in the forum where the defendant is domiciled or 'fairly regarded as at home.'" *Id.* (quoting *Bristol-Myers Squibb*, 582 U.S. at 269). No party contends that Jutai is subject to general jurisdiction in Illinois. "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021)). "A state court may exercise specific jurisdiction 'over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum State.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291(1980)). "The defendant . . . must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. . . . And the plaintiff's claims . . . must derive from[] or be connected with those activities." *Id.* at 13 (cleaned up).

The Court applies "a three-factor test for whether specific personal jurisdiction comports with due process: '(1) whether the defendant purposefully directed its activities at residents of the

forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair.'" *SnapPower*, 100 F.4th at 1374-75 (quoting *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017)); *accord B.D. by & through Myers v. Samsung Sdi Co.*, 143 F.4th 757, 766 (7th Cir. 2025).

Semisilicon asserts that Jutai is subject to personal jurisdiction because it knowingly placed products into the stream of commerce. (Dkt. 43 at 2, 4-6). It claims that Jutai has been on notice of the issues underlying this lawsuit since December 2024 and continued selling products to the Amazon Defendants with knowledge that they would enter Illinois. (*Id.* at 4-6). Semisilicon points to Jutai's website and "reliance" on Amazon.com to sell and distribute products throughout the United States and in this District. (Dkt. 47 at 5-6). Semisilicon further argues that Jutai offered no contrary evidence and Jutai's Declaration is contradicted by Semisilicon's Complaint which the Court must accept as true. (*Id.* at 5) (relying on Rule 12(b)(2)).

Semisilicon relies on the wrong standard. No Defendant moved under Rule 12(b)(2). That rule, along with the plaintiff-friendly standard Semisilicon seeks, does not apply. Semisilicon moved for a preliminary injunction. To be entitled to that "extraordinary" remedy, Semisilicon "must make a clear showing" that it is "likely to succeed on the merits." *Starbucks*, 602 U.S. at 346. It stands no chance of success if it cannot prove that the Court has personal jurisdiction over the Defendants. Were it otherwise, the movant on a preliminary injunction could seek a preliminary injunction as a matter of course and "any complaint that could withstand Rule 12(b)(6) would automatically be deserving of injunctive relief as well, rendering the court more a spectator than a referee when it comes to matters of equity." *Id.* at 350 (quotes omitted) (rejecting

10

interpretation of a statute that would lower the requirements necessary for securing an injunction). The Court rejects all of Semisilicon's arguments built on Rule 12(b)(2). (Dkts. 43, 47).

Semisilicon "asserts a stream-of-commerce theory of personal jurisdiction over [Jutai], but the precise requirements of the stream-of-commerce theory remain unsettled." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016); (*see* Dkts. 43, 47); *see also supra* at 2-7. "The Supreme Court revisited the stream-of-commerce issue in *McIntyre*, 564 U.S. 873, 131 S.Ct. 2780 (2011), but the Court again did not announce a majority opinion on this issue." *Id.* at 1349. *McIntyre* produced two tests: one from Justice O'Connor and the other from Justice Brennan. *Id.*

Under Justice Brennan's test, "mere foreseeability that the defendant's product would wind up in the forum state [is] sufficient to establish jurisdiction. To Justice Brennan, due process is satisfied when the defendant places a product into the stream of commerce while being 'aware that the final product is being marketed in the forum State.'" *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1381 (Fed. Cir. 2015) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 117 (1987) (Brennan J., concurring in part)). "The defendant's knowledge gives rise to both the direct benefit from the retail sale of the defendant's product and the indirect benefits related to the laws enabling commerce in the forum state." *Id.* Whereas "Justice O'Connor contended that something more than the foreseeability of entry of the defendant's products into the forum state was required because that low threshold does not guarantee that due process purposeful-availment requirement is met." *Id.* (cleaned up). "According to Justice O'Connor a substantial connection between the defendant and the forum State must arise out of the activities of the defendant that are purposefully directed toward the forum State. . . . Merely placing a product into the stream of commerce, *without more,* is not an act of the defendant purposefully directed toward the forum State." *Id.* The Federal Circuit has not taken "a side on the

11

*Asahi* divide." *Polar*, 829 F.3d at 1349-50; *Celgard*, 792 F.3d at 1382; *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1322 & n.7 (Fed. Cir. 2005). It matters not. Semisilicon cannot satisfy either test.

Semisilicon "is not able to meet the more flexible foreseeability standard articulated by Justice Brennan in *Asahi*." *Celgard*, 792 F.3d at 1382. Semisilicon "has not provided evidence that [Jutai] was aware that its accused [products] were marketed in [Illinois]." *Id.* Jutai submitted an uncontroverted Declaration (by Mr. Bin, Jutai's manager) averring that it sells its products "in China to independent Chinese trading companies." (Dkt. 45-1, ¶ 9). Those companies—not Jutai— "inde[]pendently determine" what they do with Jutai's products after sale. (*Id.*, ¶ 10). Mr. Bin averred that Jutai "does not control, direct, or participate in the downstream assembly of finished lighting systems" (*Id.*, ¶ 11); it also has no say in any "decisions regarding whether any finished products are sold in the United States." (*Id.*, ¶ 12). Mr. Bin declared that it "does not have knowledge of whether any finished products incorporating its power supplies are ultimately sold in I[]llinois o[r] elsewhere in the United States." (*Id.*, ¶ 13).

Semisilicon's arguments in response to Mr. Bin's Declaration fail because they hinge on Rule 12(b)(2). (Dkt. 47 at 4-6); *supra* at 10-11 (explaining that Rule 12(b)(2) does not apply). Even under the more lenient Rule 12(b)(2) standard Semisilicon's reliance on its allegations fail to overcome the unconverted averments in Mr. Bin's Declaration because "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Semisilicon did not. Consistent with this, Semisilicon's references to Jutai's website fail. (Dkt. 43

12

at 5-6). The "existence of [Jutai's] website, without more, is insufficient to show that [Jutai has] minimum contacts with" Illinois. *NexLearn*, 859 F.3d at 1378; *accord Liu*, 170 F.4th at 1094.

Semisilicon points to its cease-and-desist letter and communications during litigation as evidence of Jutai's knowledge of the allegedly infringing sales. (*See* Dkt. 43 at 6; Dkt. 47 at 4-6; Dkt. 12-2; 12-6).[1] None of this matters. Semisilicon failed to show sales in Illinois. (*See* Dkts. 12-3 *through* 12-5); *NexLearn*, 859 F.3d at 1378; *Liu*, 170 F.4th at 1094. Even the most recent screenshots Semisilicon provided in its supplemental briefing—which differ from the evidence it submitted in its motion for preliminary injunction (Dkt. 12)—fail because they show no more than the "existence" of a "website," not actual sales in Illinois. (Dkt. 47-8 through 47-9); *NexLearn*, 859 F.3d at 1378; *Liu*, 170 F.4th at 1094. The newest screenshots Semisilicon provided suffer from additional issues: Jutai is not listed as the manufacturer on any product that is available for purchase. (Dkt. 47-4 at 2, 4) (not available for sale; Jutai listed as manufacturer); (Dkt. 47-5 at 2, 6) (not available for sale; Jutai listed as manufacturer). The products that are available for sale are not manufactured by Jutai. (Dkt. 47-2 at 4) (listing Linhai Futai Lighting Co., Ltd. as the manufacturer); (Dkt. 47-3 at 4) (listing Linahi Caiyuan as the manufacturer); (Dkt. 47-6 at 4) (listing Ningbo Golden Power Electronic Co. Ltd. as the manufacturer). The irrelevance and attenuation abounds as these screenshots are not even from Jutai's website, but from other Amazon sellers' pages, including sellers that are not parties in this lawsuit. (*See, e.g.*, *id.*; *see also* Dkt. 47-7 at 2 (non-party webpage)). This is not "a clear showing" of personal jurisdiction. *Starbucks*, 602 U.S. at 345; *Celgard,* 792 F.3d at 1382 (affirming finding of no personal jurisdiction under stream of commerce theory with similar evidence presented).

---

[1] Pages of these references are in a different language and Semisilicon provided no translations.

Semisilicon's failure to satisfy Justice Brennan's test forecloses any hope of satisfying Justice O'Connor's test as it is more demanding. Semisilicon "fails to show that [Jutai's products] actually have been found in [Illinois], much less that [Jutai] can foresee that its [products] will make their way there." *Celgard*, 792 F.3d at 1382; *AFTG-TG*, 689 F.3d at 1362. Semisilicon points out that Jutai is listed as the manufacturer on certain of the Amazon Defendants' Amazon Storefront pages. (Dkt. 47 at 6) (referencing Dkt. 47-4, 47-5). True. But neither of those products are available for sale in Illinois. (Dkt. 47-4 at 2; 47-5 at 2). Both state that they are "[c]urrently unavailable. We don't know when or if this item will be back in stock." (*Id.*) Semisilicon also failed to rebut Jutai's declaration stating that it has no control, involvement, or knowledge of its products once they are sold in China. (Dkt. 45-1); *supra* at 12-13. Semisilicon's "inability to show that [Jutai] can foresee that its [products] will make their way to [Illinois] also necessarily implies that [Jutai] did not also have 'something more,' a purposeful availment of the privileges and laws of [Illinois], as required by Justice O'Connor's formulation of the stream-of-commerce test." *Celgard*, 792 F.3d at 1382 (citing *Asahi,* 480 U.S. at 112) (plurality opinion); *compare with Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 363, 371 (2021) (finding that specific jurisdiction attaches when a company "extensively promoted, sold, and serviced" a product in a forum); *B.D. by & through Myers v. Samsung Sdi Co.*, 143 F.4th 757, 768 (7th Cir. 2025) (finding purposeful availment, but ultimately no personal jurisdiction, through an "end-product stream of commerce" theory because "though Samsung SDI has not reached out directly to Indiana consumers, it . . . still deliberately exploited the Indiana market by leveraging corporate middlemen to funnel 18650 batteries, encased in packs, to the state.") (quotes omitted).

At bottom, the evidence showing contacts between Jutai and Illinois is inferential if not non-existent. Semisilicon's sole support reduces to inferences and the thinnest of online presences.

14

As this fails at the outset, the Court need not address this issue further. *NexLearn*, 859 F.3d at 1378; *Liu*, 170 F.4th at 1094; *Starbucks*, 602 U.S. at 345; *Celgard*, 792 F.3d at 1382.[2] The Court dismisses Jutai for lack of personal jurisdiction.

## II.  Preliminary Injunction

### a.  Likelihood of success on the merits

"Under 35 U.S.C. § 271(a), direct infringement can be found when 'each and every limitation set forth in a claim' is found in an accused product." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1348 (Fed. Cir. 2025) (quoting *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019)).[3] "To prove infringement, a patent owner must show, by a preponderance of the evidence, that each limitation of a patent claim, as construed by the court, is present in an accused product." *Leading Tech. Composites, Inc. v. MV2, LLC*, 2026 WL 364425, at *3 (Fed. Cir. Feb. 10, 2026) (citing *Smithkline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988)).

Semisilicon asserts that Caiyuan sells EEW brand lights ("E Lights"), Haoluo and Feixin sell YIQU brand lights ("Y Lights"), and Yihai sells BHCLIGHT brand lights ("B Lights"). (Dkt. 12 at 5, 9). It claims that these three products infringe the '117 and '935 Patents. (*Id.*) Semisilicon relies on the same two pieces of evidence for its infringement analysis: the screenshots of the product listings on Amazon.com and the cease-and-desist letter from 2024. (*Id.* at 7-13).

Semisilicon's infringement analysis is facially deficient. Its analysis is cursory. Its references to the product listing screenshots are irrelevant. (*Id.*) It provides no claim charts save one "Exemplary Comparison Chart" from its 2024 cease-and-desist letter that was only sent to

---

[2] Semisilicon never moved to amend its Complaint or motion for preliminary injunction to show evidence of actual sales in Illinois. *See Hublot*, 2026 WL 1383202, at *1-3; Fed. R. Civ. P. 15(a).

[3] Semisilicon failed to raise the doctrine of equivalents, induced infringement, or contributory infringement in its motion for preliminary injunction, so the Court does not address those theories. (Dkt. 12).

Jutai (not any of the Amazon Defendants); this illustrative chart examines Claim 1 of the '117 Patent (but not the '935 Patent), and analyzes only the B Lights (not the E or Y Lights). (Dkt. 12-2 at 14). The bulk of Semisilicon's written analysis is pulled straight from this cease-and-desist letter—even though it did not analyze the E or Y Lights nor conduct an infringement analysis for the '935 Patent, which has a different Claim 1 than the '117 Patent. (*Compare* Dkt. 12 at 7-13 *with* Dkt. 12-2). In other words, Semisilicon's infringement showing amounts provides virtually no support for five out of the six infringement claims it needed to make. (*Id.*) "A plaintiff has the burden of showing that **each** product infringes at least one claim." *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 943 (Fed. Cir. 2022) (emphasis added).

Nor is Semisilicon's infringement analysis the beacon of clarity; to the extent the Court understands it, Semisilicon couches many positions on the bare assertion that the accused products are so similar that individualized analyses are not warranted. (*See id.* at 9-13). To be sure, "if the accused products differ from each other only in insignificant details, an aggregate analysis may well be appropriate"; but Semisilicon has not submitted evidence showing that this is the case. *ABC*, 52 F.4th at 945, n.9. Relying on the cease-and-desist letter, Semisilicon asserts that "The following description and comparison are based on BHCLIGHT's product [(the B Lights)], as the remaining products are substantially the same and will not be discussed individually[.]" (Dkt. 12-2 at 9). Semisilicon does not support this statement. It presented no evidence that the three allegedly products are "substantially the same." (*Id.*) No doubt the festive lights look similar when browsing them on Amazon; but limitations for both patents require technical analyses of the lights' innerworkings—the Amazon screenshots do not show this.

16

The Court recently rejected this exact argument in a patent case where the movant also sought to shortcut its burden with a similar "representative" chart while offering no evidence for the remaining Defendants or accused products on a motion for preliminary injunction. *Che v. Shenzhen Ximeikeji Youxian Gongsi*, 2026 WL 161821, at \*2 (N.D. Ill. Jan. 21, 2026) (Kendall, J.) (citing *UATP IP, LLC v. Kangaroo, LLC*, 2024 WL 658205, at \*2 (Fed. Cir. Feb. 16, 2024)). "With no other evidence, [Semisilicon] ask[s] the Court to assume that the cursory [exemplary] infringement chart for [the B Light] should—and must—apply to three different Defendants (even though these Defendants do not sell the [B Light.]" *Id.* This falls well short of the standard requiring a "clear showing" of likelihood of success on the merits. *Id.*; *Starbucks*, 602 U.S. at 345. Indeed, "parties may not satisfy that standard by 'assuming' 'similarities' 'without any discussion of the claims.'" *Id.* (quoting *UATP IP*, 2024 WL 658205, at \*2) *see also Slip Track Sys., Inc. v. Metal Lite, Inc.*, 113 F. App'x 930, 935 (Fed. Cir. 2004) ("even assuming virtually identical breadth of the claims of the '203 and '760 patents, [Defendants'] products do not necessarily infringe the '760 patent" because "the fact that the accused product was made pursuant to the '203 patent and . . . pursuant to the virtually identical '760 patent, does not necessarily mean the completed product actually contains all of the limitations of the '760 patent"); *ABC*, 52 F.4th at 943 ("A plaintiff has the burden of showing that each product infringes at least one claim.").

Reviewing the evidence Semisilicon relies on for its infringement analysis underscores the inadequacy of its showing. Semisilicon support comes from screenshots of Amazon product listings. (Dkt. 12 at 7-13). These superficial commercial listings captures nothing more than the product's external, marketing appearance—leaving the actual, claimed technical limitations completely unaddressed. (*Id.*); (*see also* 12-3 *through* 12-5). The remainder of its support comes from the 2024 cease-and-desist letter. (Dkt. 12-2). The letter states that it was sent to only Jutai—

not any of the remaining Amazon Defendants. (*Id.*) There is no evidence any of the Amazon Defendants have seen it (despite Semisilicon's bare assertion to the contrary). (*Id.*); (Dkt. 12 at 12).[4] It was drafted by a law firm that has not appeared. Yet, conflating advocacy with evidence, Semisilicon replaces its prior counsel's assertions of infringement there as evidence of infringement here. (*Id.*) Semisilicon reliance on its own pre-litigation demand letter to prove the facts asserted in it is circular. (*Id.*)

Against that backdrop, the Court turns to Semisilicon's written infringement analysis. (*Id.*) Semisilicon's analysis for the '117 Patent is deficient. A limitation for the '117 Patent claims "a predetermined voltage." (Dkt. 1-2, '117 Patent Claim 1, 7:29-41). Semisilicon does not address this. Semisilicon's '117 Patent infringement analysis for each of the three accused products is skeletal. As an example, Semisilicon addresses both the Y Lights and E Lights in a single, cursory paragraph merely reciting claim language without support: "Each LED lamp then performs a conversion and decoding for the light signal to determine a lighting mode through the changed voltage." (Dkt. 12 at 12). This infringement assertion, for both products, cannot be satisfied by pointing to superficial product listings on Amazon.com. (*Id.*). To be sure, Semisilicon claims it conducted a "microscopic inspection" of the Y Lights and provided two screenshots from its Complaint apparently showing this; but this raises several more questions. (*Id.* at 10). If Semisilicon conducted a microscopic inspection, why has it summarily failed to show proof of sales in Illinois? Who conducted this analysis and where is the support for their work? Semisilicon provides no citations, explanations, or references explaining the microscopic inspection of the product. If an attorney conducted these tests, then its bare attorney argument; indeed, Semisilicon,

---

[4] Throughout its positions, Semisilicon treats all five Defendants as a singular entity, lumping all their actions, knowledge, and positions as one. (Dkt. 12). It does not explain why this joinder is proper when there is no indication or evidence of joint conduct between the parties—joint legal representation does not equate to joint conduct.

unlike the Amazon Defendants, submitted no expert report or testimony. Moreover, this analysis raises accuracy concerns because it was pulled from the Complaint which was based "Upon information and belief." (*Compare id. with* Dkt. 1, ¶¶ 22-26).

Semisilicon's written arguments for the '935 patent are equally unavailing. Semisilicon asserts that the Y Light is "a light emitting diode ('LED') lamp with a burnable function *because it is an LED lamp string*." (*Id.* at 9) (emphasis added). The '935 Patent does not couch the LED lamp with a burnable function on it *being* an LED lamp string. (*See, e.g.*, Dkt. 1-1, 6:22-26) ("A light emitting diode lamp string 30 with the burnable function comprises a plurality of light emitting diode lamps 1"). Semisilicon could have sought to explain its interpretation. It did not. Its sole support for this assertion—and many others in this section—are again generalized citations to Amazon screenshots—with no explanation. The Court cannot discern how a screenshot of a product listed on Amazon could satisfy all of the limitations in Claim 1 of the '935 Patent. Semisilicon also makes broad, unsubstantiated assertions—swathing over limitations with no evidentiary support or explanation. It asserts, for example, that "[e]ach LED lamp in [the B and E Lights] includes an LED driving IC connected to the LED lamps through bonding wires creating a first point of contact and a second point of contact as well as how [B Light] utilizes burn signals to record burn address data and determine whether a fuse is blown similar to the manner described according to [the Y Lights.]" (Dkt. 12 at 10-11). Semisilicon cites nothing to support this infringement assertion. While it generally contends that both B and E Lights are "similar" to the Y Lights, this requires the Court to infer based on absence what it is required to confirm based on evidence. The Court declines to make such an unsupported leap. *Leading Tech.*, 2026 WL 364425, at *3.

Semisilicon also miss limitations. For instance, Semisilicon offers no express or cogent argument how any of the products infringe the limitation claiming:

> wherein a first signal is a plurality of pulse signals, and comprises a lighting data and an address data; the light emitting diode driving apparatus is configured to compare the address data with the local address data stored in the light emitting diode driving apparatus when the light emitting diode driving apparatus receives the first signal, and then the light emitting diode driving apparatus is configured to drive the light emitting diode to light, glimmer or flash colorfully or sparklingly, or light fade-in and fade-out, based on the lighting data if the address data is the same with the local address data

(*Compare id.* at 9-13 *with* Dkt. 1-1, '935 Patent Claim 1, 7:4-14). To succeed on a preliminary injunction, Semisilicon "must make a clear showing" of infringement; Semisilicon failed. (*Id.*)

In opposition, the Amazon Defendants submitted the findings of the technical expert and engineer, Mr. Alexander. (Dkt. 22). Mr. Alexander notes that Semisilicon considered the products "substantially the same" without "any corroborating evidence or any other form of legitimate reasoning." (Dkt. 22-1 at 5). He opines that Semisilicon's infringement analysis for the '117 Patent regarding the "predetermined voltage level" fails because it finds no support in the "the plain and ordinary meaning" of the patent claims. (*Id.* at 7) (asserting that "0 volts cannot be a 'predetermined voltage' subject to the claimed limitation of 'continuous and repeated' adjustment"). Mr. Alexander contends that Semisilicon "completely fails to address the claim limitations that require 'the light emitting diode driving apparatus is configured to compare the address data with the local address data . . . and then the light emitting diode driving apparatus is configured to drive the light emitting diode to light'" for the '935 Patent. (*Id.* at 9) (emphasis removed).

"If the defendant raises a substantial question concerning infringement, *i.e.*, asserts an infringement defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *ABC*, 52 F.4th at 942 (cleaned up) (quoting *Amazon.com, Inc. v.*

20

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001); *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997).

Mr. Alexander's opinions raise substantial non-infringement questions warranting denial. "A preliminary injunction 'should not issue' if the would-be-enjoined party 'raises a substantial question concerning either infringement or validity.'" *Novartis Pharms. Corp. v. MSN Pharms., Inc.*, 2024 WL 4969281, at *5 (Fed. Cir. Dec. 4, 2024) (quoting *Amazon.com*, 239 F.3d at 1350-51 (Fed. Cir. 2001)). "By presenting competent and thorough competing expert testimony and evidence, [the Amazon Defendants have] done just that." *Novartis*, 2024 WL 4969281, at *5; *ABC*, 52 F.4th at 942.

None of Semisilicon's arguments on Reply alter the Court's findings. (Dkt. 31). Semisilicon presented no rebuttal expert. (*Id.*) It instead levels attorney argument against Mr. Alexander's opinions, claims that the Amazon Defendants impermissibly narrowed the '117 Patent's claim scope, and asserts that they mischaracterized the evidence of infringement for the '935 Patent. (*Id.* at 11-16). These arguments do not resolve the substantial questions the Amazon Defendants raised. They underscore that any decision on infringement is better determined on a complete evidentiary record.

### b. Irreparable Harm

Semisilicon contends that it will suffer irreparable harm to its licensing business absent a preliminary injunction. (Dkt. 12 at 13-14). The Amazon Defendants assert that Semisilicon's delay in seeking its injunction and business of extracting licensing fees undermines any harm. (Dkt. 22 at 3-6). They also argue that Semisilicon's assertion of irreparable harm is conclusory and unsupported. (*Id.* at 6-8).

21

"The period of delay exercised by a party prior to seeking a preliminary injunction in a case involving intellectual property is but one factor to be considered by a district court in its analysis of irreparable harm." *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). "Although a showing of delay may be so significant, in the district court's discretion, as to preclude a determination of irreparable harm, a showing of delay does not preclude, *as a matter of law,* a determination of irreparable harm." *Id.* "A period of delay is but one circumstance that the district court must consider in the context of the totality of the circumstances." *Id.*

Starting with the Semisilicon's December 23, 2024, cease-and-desist letter, it waited until October 21, 2025, to seek injunctive relief. (Dkt. 12, 12-2). While Semisilicon asserts that it "consistently and repeatedly sent correspondence in an effort to avoid motion practice," it provided scant evidence. (Dkt. 31 at 8). Semisilicon identified the 2024 cease-and-desist letter, its first filing in the Northern District of California (Dkt. 1, ¶ 28), communications regarding waiver of service with Defendants during that lawsuit (Dkt. 12-6), and its present motion for preliminary injunction. (Dkts. 12, 12-7). Still, waiting nearly ten months before "seeking a preliminary injunction undermines its assertion that extraordinary relief is needed." *Ethicon, Inc. v. U.S. Surgical Corp.*, 965 F.2d 1065 (Fed. Cir. 1992); *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (finding that a nine-month delay undercuts claim of irreparable harm). "Absent a good explanation, not offered or found here, [10] months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1557 (Fed. Cir. 1995); *see also Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1334 (Fed. Cir. 2012) ("preliminary injunctions are generally granted under the theory that

22

there is an urgent need for speedy action to protect the plaintiffs' rights") (cleaned up) (O'Malley, J., concurring).

Even assuming Semisilicon sought an amicable business resolution in the three months from December 2024, until it filed its lawsuit against Defendants on March 19, 2025, the Court is left guessing what it was doing for the next eight months of litigation. (Dkt. 12). The record is silent—except that, during this time, Semisilicon failed to properly effectuate service. Semisilicon urges the Court to not deny the motion based on "Defendants' dilatory tactics and Semisilicon's desire to avoid unnecessary motion practice," but there is no evidence of that—Defendants holding Semisilicon accountable to the Federal Rules and requiring proper service is hardly dilatory conduct. (Dkt. 31 at 8). The desire to avoid motion practice is commendable, but if Semisilicon truly needed to avoid imminent, irreparable harm, it would have sought relief sooner.

The Court next turns to the Amazon Defendants' contention that Semisilicon's business model—licensing its patents—precludes a finding of irreparable harm as monetary damages are adequate to make it whole. (Dkt. 22 at 3-4). This issue, like Semisilicon's delay, standing alone, is not dispositive. "The right to exclude others from a specific market, no matter how large or small that market, is an essential element of the patent right." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996). Because "'the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole.'" *Id.* (quoting *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988)). "By entering into . . . exclusive license agreement[s], [Semisilicon] has manifested a strong interest in maintaining an exclusive position in the relevant market." *Id.* At the same time, Semisilicon's "willingness to license the asserted patents is, of course, relevant to the . . . inadequacy of legal remedies to compensate for irreparable harm." *Apple Inc. v. Motorola,*

23

*Inc.*, 757 F.3d 1286, 1340 n. 4 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). This inquiry is fact dependent. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1340 (Fed. Cir. 2012); *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008).

The Court has insufficient evidence on this issue. Semisilicon presented no concrete evidence of irreparable harm. To be sure, it presented the Declaration of Mr. Chi. (Dkt. 12-7). Had Semisilicon presented overwhelming evidence of likelihood of success on the merits, this might have tipped the scales. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). It did not. Mr. Chi's declaration is boilerplate. (Dkt. 12-7). A specific showing of harm (specific damages figures or lost business opportunities) would have gone a long way; instead of providing that, Semisilicon merely intones that it has suffered these harms—but does not back it up. (*Id.*, ¶ 6). By definition, "irreparable" harm must be *irreparable*, surely if Semisilicon suffered something from which it cannot be repaired, it would have been able to show the scars.

The Court need not address the remaining *Starbucks* factors. Taking Semisilicon's showing on each of these two factors alone shows that they are weak; taking them together proves that they are fatal. Semisilicon's showing falls significantly short of what is necessary for the drastic and extraordinary relief of a preliminary injunction. *Starbucks*, 602 U.S. at 345.

### III. Motion for Electronic Service

Semisilicon moved for an order permitting electric service under the Hague Service Convention and Federal Rule of Civil Procedure Rule 4(f)(3). (Dkt. 15). As necessary under Rule 4(f)(3), Semisilicon contends that "International Agreement Does Not Prohibit the Proposed Methods of Service." (*Id.* at 10-12). All of the Defendants responded and asked the Court to deny

Semisilicon's motion as "moot" because they "waived service of process." (Dkt. 19 at 2).[5] Semisilicon did not reply to Defendants opposition.

The Court denies Semisilicon's motion not as moot but because "service by email in China . . . violates the Convention and Rule 4(f)(3)." *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 2026 WL 1502198, at *5 (7th Cir. May 29, 2026). The parties do not dispute that the Hague Convention applies here. Semisilicon's allegations identifying each Defendants' address shows that it does. (*Id.*, ¶¶ 2-7); Hague Service Convention, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, Art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."). Any email service on Chinese entities is therefore void. *Id.* at *6 (If "the Hague Service Convention applies, then service was improper because the Convention prohibits service by email in China."). While Defendants contend that they "waived service of process," they cannot waive international mandates and binding precedent. *Id.*; *Kangol*, 2026 WL 1502198, at *5 ("According to the Supreme Court, this 'mandatory language' provides a 'model exclusivity provision,' indicating that the Convention describes all permissible service methods and 'exclude[s] all other existing practices.'") (quoting *Société Nationale Industrielle Aérospatiale v. U.S. D. Ct. for the S.D. of Iowa*, 482 U.S. 522, 534, n.15 (1987)).

Yet each of the Amazon Defendants appeared, substantively litigated, and waived any Defense of improper service. Fed. R. Civ. P. 12(h)(1); (Dkts. 24-27) (failing to object to service). "If this appearance was authorized," which it is "presumed" to be, "it is as effective for the purposes of jurisdiction as an actual service of summons." *Hill v. Mendenhall*, 88 U.S. 453, 454 (1874). "A judgment is void if the court issuing it does not have jurisdiction over the defendant . . . and it does not if the defendant is not served . . . unless he waives service or makes an appearance

---

[5] The Defendants submitted this response jointly. The Court's order on Semisilicon's motion for electronic service (Dkt. 15) does not apply to Jutai as the Court has dismissed it from the case.

in the case without reserving an objection to jurisdiction." *Cent. Laborers' Pension, Welfare & Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999) (citing *Ruhrgas AG v. Marathon Oil Co.*, 119 S.Ct. 1563, 1570 (1999)); Fed. R. Civ. P. 12(h)(1). The Amazon Defendants failed to reserve an objection to service of process. *Supra* at 5-7; Fed. R. Civ. P. 12(h)(1).

## CONCLUSION

For all these reasons, the Court denies Semisilicon's motions for preliminary injunction and electronic service of process. (Dkts. 12, 14). Semisilicon must file the Amazon Defendants' waivers of service within 30 days of this Order. The Court dismisses Jutai from this case.

Virginia M. Kendall
United States District Judge

Date: June 11, 2026